UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| P.I.M.L., Inc., a Florida Corporation, | 04 CV 3041   (PJS/JJG) |
| Plaintiff, | |
| v. | **MEMORANDUM**<br>**OPINION AND ORDER** |
| Chain Link Graphix, LLC, Edwin W.<br>Davidson, Christopher J. Hilburn,<br>and John D. McKelvey, | |
| Defendants. | |

---

D. Clay Taylor, P.A. by D. CLAY TAYLOR, Esq. of Minneapolis, Minnesota, attorney for plaintiff.

Patterson, Thuente, Skaar & Christensen, P.A. by AARON W. DAVIS, Esq. of Minneapolis, Minnesota, attorney for Defendants Edwin W. Davidson and John D. McKelvey.

Andrea F. Rubenstein Law Office by ANDREA F. RUBENSTEIN, Esq. of Minneapolis, Minnesota, attorney for Defendants Chain Link Graphix, LLC and Christopher J. Hilburn.

---

This action was before the Court and jury for trial on September 18, 2006. The case was tried in two phases. The jury returned its verdict in Phase I on September 25, 2006 and in Phase II on September 26, 2006.

The jury found that Defendants Edwin W. Davidson (Davidson), Christopher J. Hilburn (Hilburn), and John D. McKelvey (McKelvey) were pre-incorporation promoters of a business to be called Fashion Links. They also found that these Defendants engaged in a joint venture called Fashion Links. The jury found that at least one of these Defendants entered into a contract on behalf of Fashion Links with Plaintiff P.I.M.L. (PIML). The jury found that the contract was breached by nonpayment of commissions due Plaintiff on two separate accounts, namely Maurice's and Target.

On the Maurice's account, the jury found that Plaintiff was due commissions for sales made in the amount of $170,415.95. Based upon the stipulated sales volume to Maurice's, this amounted to a commission rate of 5%. On the Target account, the jury found that Plaintiff was due commissions for goods shipped to and accepted by Target in the amount of $29,000.00. The jury also found that there were unpaid commissions for goods delivered to and accepted by Maurice's due on the last day Plaintiff worked for any of the promoters or joint venturers in the amount of $122,514.66 and for goods delivered to and accepted by Target in the amount of $29,000.00. After the verdict, the parties submitted briefs on the issue of the statutory penalty due, if any, under Minn. Stat. § 181.145.

On October 26, 2006, the Court adopted the verdicts of the jury in both phases and ordered judgment in favor of Plaintiff PIML and against the Defendants Davidson, Hilburn, and McKelvey, jointly and severally in the sum of $350,930.61. Included in the judgment was a penalty due under Minn. Stat. § 181.145, Subd. 3 in the sum of $151,514.66. The action is now before the Court on the renewed motions of all Defendants for judgment as a matter of law as to all of Plaintiff's claims, pursuant to Fed. R. Civ. P. 50(b), and for other relief.

The Motion of Defendants McKelvey and Davidson is based upon the ground that there was no legally sufficient evidentiary basis to support any of the findings by the jury. They move in the alternative to have the monetary judgment amended to remove the statutory commission penalty of Minn. Stat. § 181.145.

The Motion of Defendants Chain Link Graphix, LLC[1] (Chain Link) and Christopher Hilburn pursuant to Rule 50(b) is based upon the following grounds:

---

[1] The Court notes that the judgment ordered by the Court dismissed all claims of the Plaintiff against Chain Link Graphix, LLC.

1. As a matter of law, there was no legal basis to enter judgment against Hilburn personally for any alleged debt of Chain Link.

2. The jury's finding that PIML had a contractual relationship with Fashion Links for sales to Maurice's was contrary to the weight of the evidence.

3. The jury's findings with respect to Defendant Hilburn being a pre-incorporation promoter of Fashion Links or engaged in a joint venture called Fashion Links are not supported by the evidence as a matter of law.

Alternatively, the Defendants Chain Link and Hilburn move for an order granting a new trial or amending or altering the judgment entered against them.

## Renewed Motion for Judgment as a Matter of Law

The parties agree on the elements required to impose liability either as a pre-incorporation promoter or as a joint venturer. The essential dispute is whether or not the evidence at trial is legally sufficient to impose that type of liability upon the individual defendants.

The standard for granting a renewed motion for judgment as a matter of law is well-settled. A motion for judgment as a matter of law is properly granted when "a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party." The trial court must decide as a matter of law whether the evidence was sufficient to create an issue of fact for the jury. *Lane v. Chowning,* 610 F.2d 1385, 1388 (8th Cir. 1979). *See generally* 9A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure: Civil 2d* §§ 2524 and 2536 (2004). In making this determination the court must: a) consider the evidence in the light most favorable to the prevailing party, b) assume that the jury resolved all conflicts of evidence in favor of the prevailing party, c) assume as true all facts which the prevailing party's evidence tended to prove, d) give the prevailing party the benefit of all favorable inferences which may be reasonably

drawn from the proven facts, and e) deny the motion if, in light of the above, reasonable jurors could differ as to the conclusion that could be drawn from the evidence. *See, e.g., Northside Mercury Sales & Serv., Inc. v. Ford Motor Co.,* 871 F.2d 758, 760 (8th Cir. 1989) (citations omitted); *McGee v. South Pemiscot School Dist. R-V,* 712 F.2d 339, 343 (8th Cir. 1983); *See generally* 9A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure: Civil 2d* §§ 2524 and 2536 (2004). In addition, the Eighth Circuit has imposed a further restriction on granting a renewed motion for judgment as a matter of law post entry of judgment by stating that as a general proposition only evidence favorable to the non-moving party should be considered. *Dace v. ACF Industries, Inc.,* 722 F.2d 374, 377 (8th Cir. 1983).

## Pre-Incorporation Promoter Liability

Each individual Defendant contends that no reasonable juror could have found that he was engaged as a pre-incorporation promoter of the business to be called Fashion Links. The Court does not agree.

During trial, evidence was presented that before Fashion Links was incorporated each Defendant had his own business card which contained his respective name and title in a company called Fashion Links. Moreover, Defendant Hilburn testified that he signed a document on behalf of Fashion Links and as a "partner" of Fashion Links. A copy of this document revealed Defendant Hilburn's signature and printed notation that he was a partner of Fashion Links at the time he signed the document. Defendant Davidson testified that he designed the Fashion Links business cards. There was evidence that Defendant McKelvey sent emails discussing business strategies for both the Target and Maurice's accounts. There was also testimony that Plaintiff met with the individual Defendants for an interview with a company called Fashion Links, even though Fashion Links had not been incorporated yet.

The Court instructed the jury that a promoter of a corporation is one who actually participates in taking preliminary steps in the organization of a new business or company and associates himself with others for the purpose of organizing the company and promoting its business. Viewing the evidence in the light most favorable to the non-moving Plaintiff, which the Court must do, the Court finds that reasonable jurors could differ as to whether the evidence showed that each of the individual Defendants was actively participating in the promotion of Fashion Links by taking preliminary steps in its formation prior to its incorporation. The Court is satisfied that the jury's findings as to each individual Defendant being a pre-incorporation promoter is amply supported by the evidence.

**<u>Joint Venture Liability</u>**

Each individual Defendant also contends that no reasonable juror could have found that he was engaged in a joint venture of a business called Fashion Links.

There was evidence each Defendant referred to themselves as partners, had Fashion Links business cards and email addresses, and used these Fashion Links email accounts to discuss Target and Maurice's business with themselves and others. Moreover, there was evidence that Defendants McKelvey and Davidson each received payments from Fashion Links International following a letter of credit AMC/Target issued to Fashion Links International. Also, there was evidence that Defendant Hilburn profited when he liquidated Chain Link.

Without objection, the Court instructed the jury that a person is engaged in a joint venture when that person contracts with another party to combine their money, property, time, or skill in business operation and share profits in some fixed proportion. The Court also instructed the jury that each person must have ownership of the property involved in the venture and the mutual right of control over that property.

Based on the evidence viewed in the light most favorable to Plaintiff, the Court finds that reasonable jurors could differ as to whether the Defendants had a contract to combine their money, property, time or skill in business operation and share profits in some fixed proportion.

As to the required element that each individual Defendant must have ownership of the property involved in the venture and the mutual right of control over that property, this is a closer question. However, assuming as true all facts which the prevailing party's evidence tended to prove, it would be reasonable to conclude that each individual Defendant had ownership over the property involved in the venture and the mutual right of control over that property.

The facts were in dispute as to whether each individual Defendant was engaged in the joint venture and it was for the jury to decide using the instructions the Court gave. Based on the evidence presented and viewed in the light most favorable to Plaintiff, the jury could have made an inference that each individual Defendant was engaged in a joint venture.

### **Personal Liability of Hilburn**

In addition to challenging the evidentiary basis for his personal liability as a promoter or joint venturer, Hilburn now asserts that the proper submission should have been whether Chain Link, the corporation, was the pre-incorporation promoter or joint venturer in Fashion Links. Hilburn argues that he can be individually liable only if PIML can "pierce the corporate veil" under the requisites of *Victoria Elevator Co. v. Meriden Grain Co.,* 283 N.W. 2d 509, 512 (Minn. 1979).

Hilburn's argument in this regard totally fails. Hilburn's individual liability under the theories of pre-incorporation promoter or joint venture liability does not require that the corporate veil be pierced. The jury found that Hilburn individually was a promoter and joint venturer separate and apart from Chain Link. The jury found that the contract at issue was between Plaintiff PIML and Fashion Links, not Chain Link.

At no time in extended pretrial proceedings, at the final pretrial, in proposed jury instructions, during final argument, or during oral motions under Rule 50 did the Defendant Hilburn even hint of an issue of piercing the corporate veil. This argument is of no merit and, in any event, it has been effectively waived.

### Maurice's

Defendants assert that no reasonable juror could find that the commission rate on the goods for sales to Maurice's was 5% based on the evidence presented at trial and that the jury's finding in that regard is contrary to the weight of the evidence. The Court does not agree.

The facts are not in dispute that after Plaintiff met with all three individual Defendants in April or May 2002, Plaintiff wrote Defendant Hilburn an email in which he stated the email was to 'confirm our understanding.' (Ex. Plaintiff 1.) In the email, Plaintiff said that the "[c]ommission goal is 5%–Danny understands that many programs will have to be @ 3-4% to make fly and is open, but would like to be part of the decision." (*Id.*) The Court finds that the meaning of this language was a question for the jury to decide—namely whether this language meant that the commission rate was 5% or between 3-4%. The commission rate was in dispute and the Court must assume that the jury resolved this conflict in favor of the Plaintiff and also that the jury gave the Plaintiff the benefit of all favorable inferences which may have been reasonably drawn from the proven facts. Based on this evidence, the Court finds that reasonable jurors could differ in finding that the commission rate was 5% for sales of goods to Maurice's and a finding of a 5% commission rate is clearly supported by substantial evidence.

### Target

Defendants assert that based on the evidence no reasonable juror could have found that additional goods were shipped to and accepted by Target that the Plaintiff was not previously paid

commissions for. Specifically, Defendants assert that the invoice records, which were provided by AMC/Target, show that only Mossimo goods were sent to Target and there is no evidence of any other goods being shipped to and accepted by Target. The Court does not agree.

There was evidence presented during trial that AMC, Corporation (the merchandising division of Target) issued a letter of credit authorizing a company called Fashion Links International to receive money if certain conditions were met. After this letter of credit was issued, there was evidence that Fashion Links International paid substantial amounts to Fashion Links LLC. Defendant McKelvey testified that he and Defendant Davidson received this money for consulting services they provided to Fashion Links International and not as a benefit for sales the Plaintiff made to Target on behalf of Fashion Links. It was for the jury to determine the truth of this explanation. Even though the records received from Target or AMC did not show any additional goods supplied other than the Mossimo brand, Plaintiff testified that he sold additional brands to Target for the individual promoters or those engaged in the joint venture. Thus, a reasonable juror could have made an inference based on this evidence that additional goods were shipped to and accepted by Target for which Plaintiff had not received his commission. The evidence created an inference that Defendants McKelvey and Davidson received monies from Fashion Links International which could have been linked to sales that Plaintiff made to Target on behalf of the business called Fashion Links.

Admittedly, the issue of evidence of damages on the Target account is a closer question than that of the Maurice's account. However, based on the evidence presented at trial, particularly the records which are favorable to the non-moving Plaintiff, the Court finds that reasonable jurors could differ as to the amount of additional goods shipped to and accepted by Target for which Plaintiff was due commissions.

**Minnesota Statutes § 181.145**

In ordering judgment on the verdict, the Court included a penalty under Minn. Stat. § 181.145 equal to the amount due the Plaintiff for commissions at the date of his resignation. The statute provides in pertinent part:

> **Subd. 2. Prompt payment required.** (a) When any person, firm, company, association, or corporation employing a commission salesperson in this state terminates the salesperson, or when the salesperson resigns that position, the employer shall promptly pay the salesperson, at the usual place of payment, commissions earned through the last day of employment or be liable to the salesperson for the penalty provided under subdivision 3 in addition to any earned commissions
>
> **Subd. 3. Penalty for nonprompt payment.** If the employer fails to pay the salesperson commissions earned through the last day of employment . . . the employer shall be liable to the salesperson, in addition to earned commissions, for a penalty for each day, not exceeding 15 days, which the employer is late in making full payment or satisfactory settlement to the salesperson for the commissions earned through the last day of employment. The daily penalty shall be in an amount equal to 1/15 of the salesperson's commissions earned through the last day of employment which are still unpaid at the time that the penalty will be assessed.
>
> **Subd. 4. Amount of commission disputed.** (a) When there is a dispute concerning the amount of the salesperson's commissions earned through the last day of employment . . . the penalty provided in subdivision 3 shall not apply if the employer pays the amount it in good faith believes is owed the salesperson for commissions earned through the last day of employment within the applicable period as provided under subdivision 2; except that, if the dispute is later adjudicated and it is determined that the salesperson's commissions earned through the last day of employment were greater than the amount paid by the employer, the penalty provided in subdivision 3 shall apply.

Minn. Stat. § 181.145, Subd. 2-4 (2006).

The statutory language itself is clear, unambiguous, and mandatory. *State by Beaulieu v. RSJ, Inc.,* 552 N.W.2d 695, 701 (Minn. 1996). The Minnesota Court of Appeals in *Schultz v. Maverick*

*Construction, Co.,* 1999 WL 243447 *3 (Minn.App. 1999), affirmed the lower court's award of statutory penalties and fees under the Act. The court held: "Because these subdivisions give no discretion to the court, it appears the trial court properly awarded statutory penalties and attorney fees."

Citing *Stuart v. Midwestern/Northern Incorporated*, 2001 WL 1608832 (Minn. App. 2001), Defendants assert that the Court has discretion under the statute to award some lesser amount than that called for by the language of the statute. The Court does not agree. This case is distinguishable from *Stuart.* In *Stuart*, the trial court refused to grant plaintiff a penalty under Minn. Stat. § 181.145 because plaintiff did not earn the commissions through her own labor, and to do so, the result would have been inequitable. *Id.* at *2-3. If required to pay the penalty, the company would have paid three times the amount of the unpaid commissions (twice to plaintiff and once to the individuals who made the actual sales.) *Id.* at *3. Unlike *Stuart*, in this case there was no dispute as to whether PIML, Inc., earned the commissions through its own labor. Also, if the Court grants PIML, Inc., a penalty under Minn. Stat. § 181.145, the Defendants will not be required to pay three times the amount of unpaid commissions because Defendants have not already paid any other individuals for these same commissions due PIML, Inc.

Defendants finally argue that in applying Minn. Stat. § 181.145, the penalty should not begin to run until final adjudication of this case. No authority is cited for this interpretation and the Court is aware of none. Such an interpretation is contrary to the terms of the statute under which the grace and penalty periods are set in motion from the date of written demand by the salesperson, Minn. Stat. § 181.145, Subd. 2. PIML made written demand in January of 2004.

The statute in question is clearly generous toward and slanted sharply in favor of commission salespersons. It does not, however, give the Court license to exercise its own discretion and award Plaintiff a lesser amount than that called for by its terms.

### New Trial

The Court's power to grant a new trial is broad. A new trial should be granted if "substantial justice has not been done." 11 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure: Civil 2d* § 2803 (2004). Substantial justice has not been accomplished when the jury verdict is contrary to the "clear weight, overwhelming weight or great weight of the evidence" *Goldsmith v. Diamond Shamrock Corp.,* 767 F.2d 411, 416 (8th Cir. 1985) or when the Court's improper evidentiary ruling was prejudicial to the moving party. *Midcontinent Broadcasting Co. v. North Central Airlines, Inc.,* 471 F.2d 357, 359-60 (8th Cir. 1973). *Atlas Pile Driving Co. v. DiCon Financial Co. Ltd.,* 697 F. Supp. 1058, 1070 (D. Minn. 1988).

The verdicts in this instance were not against the clear weight of the evidence, the result of passions or prejudice, or clearly excessive in amount. None of the Defendants cite erroneous evidentiary rulings by the Court, inappropriate special verdict questions, or error in the Court's charge. The case was well tried by able counsel and all parties had a fair and equal opportunity with the jury. There is no legal basis for a second trial.

### Conclusion

Upon the foregoing,

**IT IS ORDERED** that:

1. Defendants Edwin W. Davidson, Christopher Hilburn, John D. McKelvey, and Chain Link Graphix LLC's Renewed Motions for Judgment as a Matter of Law are **DENIED.**

2. Defendants Edwin W. Davidson, Christopher Hilburn, John D. McKelvey, and Chain Link Graphix LLC's Motions for an Amended Judgment are **DENIED.**

3. Defendants Christopher J. Hilburn and Chain Link Graphix LLC's Motion for a New Trial is **DENIED.**

DATED: December 6, 2006.

    S/ Donald D. Alsop
DONALD D. ALSOP, Senior Judge
United States District Court